(906 P.2d 172)
No. 72,827

TERRY ALIRES, *Appellant,* v. STATE OF KANSAS, *Appellee.*

—

Opinion filed November 22, 1995.

*Bradley E. Ambrosier*, of Yoxall, Antrim, Yoxall & Ambrosier, of Liberal, for appellant.

*Linda S. Trigg*, of Liberal, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., LEWIS, J., and ROBERT G. JONES, District Judge, assigned.

GERNON, J.: Terry Alires appeals the denial of his habeas corpus petition filed pursuant to K.S.A. 60-1507. Alires contends that his equal protection rights had been violated by the State's use of a peremptory challenge in jury selection to strike a black juror.

In 1989, Alires was convicted of kidnapping and aggravated robbery. Alires' convictions were affirmed after a direct appeal to the Kansas Supreme Court.

The present action was filed in 1993 while Alires was serving his sentence. The appeal raises the issue of the use of a peremptory challenge.

Pursuant to Supreme Court Rule 183(c)(3) (1994 Kan. Ct. R. Annot. 179):

"[A] proceeding under K.S.A. 60-1507 cannot ordinarily be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided there were exceptional circumstances excusing the failure to appeal."

Alires acknowledges the peremptory challenge issue is a trial error that was not brought in his direct appeal but argues it is appropriate for collateral attack in this 60-1507 action because his 14th Amendment right to equal protection was violated and because there were exceptional circumstances which prohibited him from raising the issue on direct appeal. As asserted by Alires, an intervening change in the law between the time of direct appeal and a collateral attack can excuse the failure to raise a constitutional question on direct appeal. *Lassley v. State*, 2 Kan. App. 2d 158, 159, 576 P.2d 1094, *rev. denied* 225 Kan. 844 (1978).

Alires is a Hispanic person. During the jury selection process at Alires' trial, the State used one of its peremptory challenges to strike a black person from the jury pool. Alires' counsel indicated the State should proffer its reasons for striking a black person. The State responded that such a proffer would only be required if Alires himself were a black person. The trial court agreed and did not require the State to give its reasons for the peremptory challenge.

The trial was held in March 1989. At that time, the Supreme Court decision of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), provided the rules concerning racial discrimination in peremptory challenges.

Following Alires' conviction and direct appeal, the United States Supreme Court filed *Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d

411, 111 S. Ct. 1364 (1991), which extended the *Batson* principles. According to *Powers*, a criminal defendant can object to race-based exclusion of jurors even when the excluded juror and the defendant are not of the same race.

Alires argues the *Powers* decision is an intervening change in the law which should allow him to collaterally attack the jury selection process even though he did not do so on direct appeal. In *Lassley v. State*, 2 Kan. App. 2d at 159, an intervening change in the law was described as an abrogation of a prior rule. In *State v. Sledd*, 250 Kan. 15, 20, 825 P.2d 114 (1992), the *Powers* decision was described as reaffirming and extending *Batson*.

We agree that *Powers* extends *Batson* to such a significant degree that under the facts of this case, it ought to be considered under the exceptional circumstances exception. Under *Batson*, Alires could not have had an objection to the striking of a black juror. Under *Powers*, however, Alires could have made an objection to the striking of a black juror.

Given the right to object, the burden then would have shifted to the State to make a showing of a nonracially motivated basis for striking the black juror. Had all of this occurred at trial, it would have been reversible error for the trial court not to require such a showing by the State. See *State v. Foust*, 18 Kan. App. 2d 617, 624, 857 P.2d 1368 (1993).

Given the series of "what if's" noted above, we will address the merits of the issue raised by Alires despite the fact that he did not raise the issue on direct appeal.

The issue for us is whether the holding in *Powers* ought to be applied retroactively and a new trial ordered for Alires.

In *State v. Foust*, 18 Kan. App. 2d at 622, this court quoted the *Griffith v. Kentucky*, 479 U.S. 314, 327-28, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987), rule on retroactivity of rules concerning conduct of criminal trials, which states that such new rules are to be applied retroactively only to cases pending on direct review. See *State v. Hood*, 242 Kan. 115, 117, 744 P.2d 816 (1987) (*Batson* should apply retroactively to all Kansas cases pending on direct appeal at the time the *Batson* decision was released.); *Robinson v. McBride Bldg.*

*Co.*, 16 Kan. App. 2d 120, 125, 818 P.2d 1184 (1991) (citing the *Griffith* rule applied to retroactive application of *Batson*).

Alires' direct appeal was decided by the Kansas Supreme Court on May 25, 1990. The *Powers* case was decided in 1991, after Alires' case was final. The *Powers* decision may not be applied retroactively to Alires' collateral challenge. "A new constitutional rule of criminal procedure generally will not be applied retroactively to cases on collateral review." *State v. Neer*, 247 Kan. 137, Syl. ¶ 3, 795 P.2d 362 (1990). Two exceptions cited to this rule in the *Neer* case are not applicable to the present case. The *Neer* case cites *Allen v. Hardy*, 478 U.S. 255, 92 L. Ed. 2d 199, 106 S. Ct. 2878 (1986), which "held that *Batson* could not be applied retroactively to cases on collateral review." 247 Kan. at 142.

Alires next argues that *Powers* is simply a further explanation of the *Batson* case and, since *Batson* was decided before Alires' jury selection, there is no need to analyze whether *Powers* should be applied retroactively.

This argument runs opposite to Alires' first argument that *Powers* is an intervening change in the law. Also, *Powers* is more than simply a further explanation of *Batson*. Before *Powers*, Alires had no valid challenges to the striking of a black juror. After *Powers*, Alires would have been able to at least require the State to give its reasons for striking the juror.

We conclude that the holding in *Powers* cannot be applied retroactively to the jury selection here and that Alires' other argument is without merit.

Affirmed.